**RAMPART CAPITAL CORPORATION, Appellant,**

v.

**EGMONT CORPORATION AND WESTLAND OIL DEVELOPMENT CORPORATION, Appellees.**

No. 09–99–146 CV.

Court of Appeals of Texas, Beaumont.

Submitted March 2, 2000.

Decided May 25, 2000.

Stephen G. Scholl, Hirsch & Westheimer, Houston, for appellant.

William T. Fowler, Bryan Patrick Fowler, Conroe, Betsy Kamim, Woodard, Hall & Primm, Houston, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

On May 28, 1982, Westland Oil Development Corporation executed a $4,000,000 promissory note payable to Killeen Savings & Loan Association. The note was secured by a deed of trust securing an interest in an undivided 40% interest in certain real property located in Montgomery County, Texas, and required monthly payments through May 28, 1987. On April 1, 1983, Fort Hood National Bank acquired an 8.182% participation interest in the Killeen Note. On May 28, 1987, without knowing that Fort Hood owned a participation interest, Westland executed a renewal of the Killeen Note for another 5 year term, through May 28, 1992. On that same date, Killeen and Fort Hood extended their participation agreement to apply to the Killeen Renewal Note.

On October 7, 1987, Westland filed for reorganization in the bankruptcy court. The proof of claim filed Killeen did not mention Fort Hood's participation interest. Fort Hood did not file a proof of claim

On March 30, 1988, Killeen and Fort Hood converted the participation agreement into an assignment of an 8.182% interest in the Killeen Renewal Note. The assignment was filed in the real estate records of Montgomery County, Texas, on April 7, 1988. Killeen and Fort Hood executed another agreement, defining their respective rights and obligations, on June 28, 1988.

The bankruptcy court approved Westland's plan of reorganization on November 3, 1988. As part of the plan, Westland agreed to sell the collateral for the Killeen Renewal Note by April 30, 1989, or abandon the collateral to Killeen and give Killeen an additional unsecured claim for $1,500,000.

On December 28, 1988, the Federal Deposit Insurance Corporation declared Killeen insolvent and took over as receiver. On November 16, 1990, the FDIC sold Killeen's interest in the Killeen Renewal Note to Egmont Corporation, the parent company of Westland. The FDIC, Westland and Egmont signed a Settlement Agreement and Release. The FDIC received an unsecured claim for $1,500,000.

On September 3, 1997, Rampart Capital Corporation obtained Fort Hood's interest in the Killeen Renewal Note. On February 18, 1998, Rampart sued Egmont for breach of contract for failing to honor the participation agreement and assignment of the Killeen Renewal Note, and for breach of fiduciary duty for failing to collect Ram-

part's share of the Killeen Renewal Note. Although Rampart's pleadings included a claim for $155,458 for its share of the unpaid balance of the Killeen Note, Rampart expressly abandoned that claim in this appeal. Thus, in the Killeen transaction, Rampart seeks relief only against Egmont.

On December 5, 1988, in an unrelated transaction, Westland signed a promissory note payable to NCNB Texas National Bank. On May 14, 1992, Westland executed a non-recourse renewal note in favor of the FDIC as receiver for RepublicBank Dallas, N.A. The renewal deed of trust executed the same day purported to convey a secured interest in certain real property. The deed of trust included a clause that the conveyance was of "Mortgaged Property (as defined in the Prior Deed of Trust)," and that "Grantor expressly acknowledges that the lien created by this Deed of Trust and the Prior Deed of Trust result in Beneficiary receiving a lien in one hundred percent (100%) of the Land." In its petition, Rampart alleged Westland did not in fact own all of the secured property. The FDIC sold the FDIC Renewal Note and the FDIC Renewal Deed of Trust to Rampart on December 16, 1994. Rampart foreclosed the deed of trust on November 4, 1997.

When litigation commenced on February 18, 1998, Rampart sued Westland for breach of the covenant of seisen and breach of warranty for failure to convey good title to the FDIC Renewal Deed of Trust. Egmont was not involved in the transaction. In the FDIC transaction, Rampart seeks relief only against Westland.

Westland and Egmont filed a joint motion for summary judgment, on the following grounds: 1) that Rampart is not entitled to enforce payment of the Killeen Renewal Note; 2) that Egmont is a holder in due course of the Killeen Renewal Note; 3) that the statute of limitations on the Killeen Renewal note had expired; 4) that there had been accord and satisfaction on the Killeen Renewal Note; 5) that the Killeen Renewal Note had been discharged in Westland's bankruptcy; 6) that Egmont owed no duties to Rampart because it was not aware of Fort Hood's interest in the Killeen Renewal Note; 7) that enforcement of any duties of Egmont is barred by the Statute of Frauds; 8) that the non-recourse provision of the FDIC Deed of Trust barred Rampart's actions against Westland for breach of warranty of title; 9) for breach of covenant of seisin; and 10) that there was no evidence to support Rampart's causes of action. The trial court granted the motion for summary judgment.

Rampart raises seven issues on appeal. Issues one through six concern Rampart's claims against Egmont on the Killeen Renewal Note:

Issue one: "Is Rampart precluded from enforcing its interest in the Killeen Renewal Note because it is not a holder of the note, but rather, a part owner?"

Issue two: "Does Egmont qualify as a holder in due course of the Killeen Renewal Note so as to preclude Rampart's claims against it?"

Issue three: "Does the statute of limitations bar Rampart's claims on the Killeen Renewal Note?"

Issue four: "Have Rampart's claims against the Killeen Renewal Note been discharged by an accord and satisfaction?"

Issue five: "Does Egmont owe Rampart a duty to enforce the Killeen Renewal Note?"

Issue six: "Does the Statute of frauds bar Rampart's claims on the Killeen Renewal Note?"

Issue seven concerns Rampart's claims against Westland on the FDIC Deed of Trust:

Issue seven: "Do the non-recourse provisions bar Rampart's claims with respect to the FDIC Renewal Deed of Trust?"

Rampart argues a six-year statute of limitations applies to its claims regarding the Killeen Renewal Note. The maturity date on the Killeen Renewal Note was May 28, 1992. Four years had not expired when the legislature created a six year statute of limitations in place of the previously applicable four year statute of limitation. *See* Tex. Bus. & Com.Code Ann. § 3.118(a) (Vernon Supp.2000); Tex. Civ. Prac. & Rem.Code Ann. § 16.004 (Vernon Supp.2000). An action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date stated in the note. *Id.* While we agree with Rampart that the amended version of Section 3.118 applied to its suit to enforce the Killeen Renewal Note, Rampart abandoned its suit against Westmont on the Killeen note. The participation and assignment were made *without recourse* to Killeen. The only claims now being asserted concerning this transaction are Rampart's claims against Egmont for breach of contract and breach of fiduciary duty. These claims arise out of the assignment and underlying participation agreement, neither of which are negotiable instruments. The statute applicable to these claims is Section 16.004 of the Civil Practice and Remedies Code, not Section 3.118 of the Business and Commerce Code. Rampart's cause of action for breach of the assignment and participation agreements accrued no later than the May 28, 1992, maturity date of the note. Rampart sued Egmont on February 18, 1998, more than four years after the date Rampart's cause of action accrued.

The trial court did not err in granting summary judgment for Egmont on Rampart's claims against Egmont because Egmont proved those claims were barred by limitations as a matter of law. Because there was a valid ground for granting summary judgment, we need not address Rampart's challenges to Egmont's other grounds for summary judgment.

Rampart argues Westland may not exempt itself from its breach of warranty of title by relying upon the non-recourse provisions of the FDIC Deed of Trust. Section 5.25 of the deed of trust stated:

Anything herein to the contrary notwithstanding, it is specifically provided that neither Grantor nor Grantor's agents, officers, directors, shareholders, successors or assigns shall have any personal or corporate liability for the payment or performance of any debt, expense, indemnity, tax, imposition, obligation, claim, damage, injury, covenant, duty, or liability, or for any action or cause of action, arising hereunder or under the Note or under any of the other Security Instruments (in particular, without limitation, any environmental matters), or be liable for any money judgment or otherwise, it being understood that Beneficiary and its successors and assigns as holders of the Note may as their exclusive remedy look only to the security provided herein to enforce the payment or performance of any of the foregoing.

The following paragraph, Article VI, stated:

Grantor and Beneficiary hereby acknowledge that the Prior Deed of Trust and rights, titles, interests, liens, powers and privileges by virtue thereof are hereby renewed and extended and shall be and continue to be in full force and effect to secure payment of the Note and any and all renewals, modifications, increases and extensions thereof. All terms and provisions of the Prior Deed of Trust shall remain unchanged and are in full force and effect and that Beneficiary, as holder of certain indebtedness secured by the Prior Deed of Trust, is entitled to the benefits of the liens created by the Prior Deed of Trust. Further, Grantor does hereby grant, bargain, sell, transfer, assign and convey into the Trustee (as defined in the Prior Deed of Trust), his successors and assigns, the Mortgaged Property (as defined in the Prior Deed of Trust), on the terms set forth in the Prior Deed of Trust to

secure the Note and all other present and future indebtedness of Grantor to Beneficiary. Grantor expressly acknowledges that the lien created by this Deed of Trust and the Prior Deed of Trust result in Beneficiary receiving a lien in one hundred percent (100%) of the Land.

Rampart argues the non-recourse clause does not apply to the breach of warranty of title because the non-recourse clause does not mention breach of warranty of title and because the renewal clause follows the non-recourse clause in the deed of trust. An unambiguous contract must be enforced as written, examining the entire document and giving terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). We must consider each part with every other part so that the effect and meaning of one part on any other part may be determined, presuming that the parties intend every clause to have some effect. *Id.*

The entire deed of trust must be considered in determining the import and effect of the non-recourse and renewal clauses. The granting clause conveyed the "Mortgaged Property, subject only to the Permitted Exceptions." "Mortgaged Property" is defined in Section 1.1 as "the Real Estate and the Collateral, collectively." "Real Estate" is defined in Section 1.1 as "the Property, the Improvements, [and] the Personal Property...." Section 1.1 defines "Property" as follows:

"Property" shall mean an undivided forty percent (40%) interest in and to the Land, which interest is in addition to the undivided sixty percent (60%) lien interest in the Land created by the Prior Lien [to RepublicBank Dallas, N.A.], resulting in the Beneficiary enjoying a one hundred percent (100%) lien interest in the Land.

The deed of trust contained the following covenant: "To protect, warrant and forever defend title to the Mortgaged Property unto Beneficiary, its successors and assigns, at Grantor's expense, against all persons whomsoever lawfully having or claiming an interest therein or a lien thereon, subject to the Permitted Exceptions...."

Westland clearly warranted its title to the interest conveyed to the FDIC and ultimately to Rampart. Rampart's argument that the non-recourse clause does not apply to the warranty because it appears later in the document must fail because the granting of the interest and the express warranty appear before the non-recourse clause, not after it as Rampart claims. The non-recourse clause includes global, non-exclusive language that the Beneficiary could look "only to the security" to enforce performance of "any of the foregoing," "anything herein to the contrary notwithstanding" and that Westland could not be liable for "any money judgment." The purpose of the renewal clause was to renew an existing lien and to acknowledge that Westland was granting an entire lien interest, rather than the partial lien interest granted in the prior deed of trust. None of the language in that clause addresses the remedies available to the beneficiary in the event of a breach of the deed of trust. Issue seven is overruled.

We affirm the trial court's judgment.

AFFIRMED.